IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RONALD W. LAWRENCE, JR. AND | § | |
| JENNIFER J. LAWRENCE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | A-13-CV-913 LY |
| | § | |
| FEDERAL HOME LOAN MORTGAGE | § | |
| CORPORATION; MERSCORP, INC.; | § | |
| WELLS FARGO BANK N.A.; | § | |
| WELLS FARGO HOME MORTGAGE; | § | |
| | § | |
| | § | |
| Defendants. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are the following related motions and responsive pleadings: Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39], Plaintiffs' Response to Wells Fargo Bank, N.A, Mortgage Electronic Registration Systems, Inc. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment, Motion for Continuance and Motion to Strike [Clerk's Dkt. No. 41], and Defendants' Reply in Support of their Motion for Summary Judgment [Clerk's Dkt. No. 43];  Defendants' Response to Plaintiffs' Motion for Continuance [Clerk's Dkt. No. 45]; Defendants' Response to Plaintiffs' Motion to Strike [Clerk's Dkt. No. 44], Plaintiffs' Reply in Support of Plaintiffs' Motion to Strike [Clerk's Dkt. No. 47], and Defendants' Sur-Reply to Plaintiffs' Motion to Strike [Clerk's Dkt. No. 50]; Plaintiffs' Motion for Leave [Clerk's Dkt. No. 42], and Defendants' Response to Plaintiffs' Motion for Leave [Clerk's Dkt. No. 46].  The motions were referred by United States District Judge Lee Yeakel to

1

the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.   After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

### A. Procedural Background

This case arises out of attempts by Plaintiffs, Ronald and Jennifer Lawrence, to modify the terms of their mortgage loan (the "Loan") and avoid foreclosure on their property.  Plaintiffs filed their state court action in the 428th Judicial District Court of Hays County, Texas, on September 27, 2013, initially joining as defendants not only Federal Home Loan Mortgage Corporation (FHLMC), Merscorp, Inc. (MERS), Wells Fargo Bank, N.A. (Wells Fargo), and Wells Fargo Home Mortgage (WFHM), but also two law firms involved in the 2011 foreclosure proceedings, and seven different entities associated with Plaintiff's 2004 initial application for the Loan or their 2008 refinancing of the Loan.  *See generally* Def's Suppl. To Removal [Clerk's Dkt. No. 8] at Ex. A, Pf's Orig. Pet..

### 1. Jurisdiction

Defendants removed the cause to federal court on October 14, 2013, on the basis of federal question jurisdiction, 28 U.S.C. § 1441(b), arising out of Plaintiffs' claims against all Defendants concerning the Truth in Lending Act (TILA) and the Real Estate Settlement Practices Act (RESPA). *See* Interim Report and Recommendation of December 11, 2013 [Clerk's Dkt. No. 19], at 8.

The undersigned has previously recommended dismissal of all claims against all defendants except FHLMC, MERS, Wells Fargo, and WFHM (collectively, "Defendants"), and the District Court has dismissed all parties other than these remaining Defendants. *See generally* Order of February 4, 2014 [Clerk's Dkt. No. 23]; Order of May 5, 2014 [Clerk's Dkt. No. 29]; Order of August 4, 2014 [Clerk's Dkt. No. 35]. Plaintiffs' federal claims concerning alleged violations of TILA and RESPA are asserted against the remaining defendants, and federal question jurisdiction (along with pendant jurisdiction over related state law claims) therefore remains appropriate. *See* Interim Report and Recommendation of December 11, 2013 [Clerk's Dkt. No. 19], at 8.

The undersigned further notes the Texas-based defendants who have been previously dismissed were not properly joined in the first place, because the Plaintiffs failed to state any reasonable basis for relief against them.[1]   *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573

---

[1] *See* Interim Report and Recommendation of December 11, 2013 [Clerk's Dkt. No. 19], at 11-12 (Plaintiffs failed to state a claim against Texas law firm defendants who were immune from suit); Interim Report and Recommendation of June 6, 2014 [Clerk's Dkt. No. 34] at 9-11 (Plaintiffs' claims against various Texas-based defendants were barred by applicable statutes of limitations).

With regard to the Interim Report and Recommendation of February 25, 2014 (Clerk's Dkt. No. 25) at 2-3, the undersigned merely recommended dismissing the case against various Texas-based defendants who were never served with process. Because they were not served at the time of removal, they did not impact propriety of removal, 28 U.S.C. § 1446(b)(2)(A), but their citizenship must still be considered in determining whether diversity jurisdiction exists. *Alphonse v. Omni Hotels Corp*., 757 F. Supp. 722, 724 (E.D.La. 1991).

Reviewing the Plaintiffs' Original Petition, the undersigned *sua sponte* examines the basis for its jurisdiction in this matter. *See Smith v. Bank of Am. Corp.,* No. 14-50256, 2015 U.S. App. LEXIS 2163, at *12-13 (district court must make express jurisdictional findings before reaching the merits of the case, even if not adequately raised by the parties). On review, the undersigned determines the causes of action plead against the un-served Texas defendants, Texas Capital Bank, Flagstar Bank, and Advanced Appraisal Services, relate to alleged malfeasance in connection with Plaintiffs' 2005 appraisal and their 2008 refinancing transaction, and none of these Defendants are alleged to have played any role in the events underlying Plaintiffs' complaint after August 10, 2008. *See* Def's Notice of Removal [Dkt. 1], Ex. A, Orig. Pet. at ¶¶ 10, 11, 24, 25, 27, 31, 28.

Therefore, for the same reasons outlined in detail in the Interim Report and Recommendation of June 6, 2014 [Clerk's Dkt. No. 34] at 9-11, Plaintiffs' claims against these defendants for negligent misrepresentation (2 year statute of limitations, TEX. CIV. PRAC. & REM. CODE § 16.003(a)), TILA (3 year statute of limitations,15 U.S.C. § 1635(f)), RESPA (one or three years statute of limitations, depending on the nature of the violation, 12 U.S.C. § 2614), Texas' Deceptive Trade Practices Act (2 year statute of limitations, TEX. BUS. & COMM. CODE § 17.565), and

(5th Cir. 2004).  Because the remaining Defendants are the only defendants properly joined at the time the case was removed, and each of them is a corporation formed under the laws of Delaware (or, in the case of FHLMC, the District of Columbia), who maintains its principal places of business outside of Texas, the undersigned determines that subject matter jurisdiction over this case is additionally and alternatively proper pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction.

### 2. Pending Motions

The remaining Defendants move for summary judgment as a matter of law on all outstanding claims.  *See generally* Mot. Summ. J. [Clerk's Dkt. No. 39].  Regarding Defendants' pending Motion for Summary Judgment, Plaintiffs seek a continuance, asserting that discovery has not been completed.  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 2.  Additionally, Plaintiffs object and move to strike the deposition testimony of Jennifer Lawrence from Defendants' summary judgment evidence, contending the deposition was "not finished."  *Id.* Defendants oppose both motions.  *See generally*, Resp. Mot. Cont. [Clerk's Dkt. No. 45]; Resp. Mot. Strike [Clerk's Dkt. No. 44].

Plaintiffs raise several arguments relating to the validity of the original mortgage agreement in their Response to Defendants' Motion for Summary Judgment.  Resp. to Mot. Summ. J. [Clerk's Dkt. No. 41] at 2-5, 9.  Defendants contend these are "unpleaded, new arguments and allegations" and object to Plaintiffs' asserting them at the response stage. Reply

---

breach of contract and fraud claims (4 year statute of limitations, TEX. CIV. PRAC. & REM. CODE § 16.004) had long expired when Plaintiffs filed suit on September 27, 2013, some six years after the last factual allegation concerning any of these defendants.  Because the claims asserted against Texas Capital Bank, Flagstar Bank, and Advanced Appraisal Services were time barred at the time of removal, the undersigned concludes there was no chance of recovery against these defendants and they were improperly joined.  *Smallwood*, 385 F.3d at 573.  In light of this conclusion and the dismissals of the other improperly joined Texas defendants, diversity jurisdiction has been and continues to be a separate and alternative ground for subject matter jurisdiction in this case.  28 U.S.C. § 1332(a).

Mot. Summ. J. [Clerk's Dkt. No. 43] at 3.  Defendants nevertheless address these arguments in their Reply briefing. *Id.*

Contemporaneously with their Response to Defendants' Motion for Summary Judgment, Plaintiffs seek leave to file a Supplemental Petition adding claims for declaratory judgment, common law fraud, breach of contract and breach of the duty of good faith, and pleading an agency theory of liability concerning the actions of Defendants' various employees. Mot. Leave, [Clerk's Dkt. No. 42], Ex. A.  Defendants oppose the motion to supplement the petition as untimely and prejudicial in light of the expiration of the dispositive motion deadline.  *See Generally* Resp. Mot. Leave [Clerk's Dkt. No. 46].

## B.  Factual Background

On July 11, 2008, in renewal and extension of a previous loan on their property located at 1420 Shelton Ranch Road, Dripping Springs, Texas 78620 (the "Property"), Plaintiffs Ronald and Jennifer Lawrence obtained a refinanced loan in the total amount of $414,000.  Mot. Summ. J. [Clerk's Dkt. No. 39], Ex. 5A.  Plaintiffs executed a Note, *id.*, and a Deed of Trust securing payment on the Note with the Property.  *Id.* at Ex. 1.  The Deed of Trust named MERS as a beneficiary and nominee for Lender and Lender's successors and assigns.  *Id.*  The 2008 Note and Deed of Trust are the subject of the present dispute, *id.* at 2, and will collectively be referenced as "the Loan."

In September 2008, Wells Fargo became the mortgage servicer on the Loan.  *Id.* at 2 and Ex. 7B; Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 5.  Plaintiffs filed for bankruptcy in March of 2010, and Wells Fargo obtained relief from the Bankruptcy stay.  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] Ex. K, Affidavit of J. Lawrence at  ¶¶ 19-20.  Plaintiffs failed to make

timely payments on the Loan beginning in 2010.  Mot. Summ. J. [Clerk's Dkt. No. 39] at 2, Resp to Mot. Summ. J. [Clerk's Dkt. 41]  at 1.

After Plaintiffs defaulted on the Loan, they completed approximately six separate applications for repayment assistance, specifically including three applications for a HAMP loan modification, over the course of a little more than a year.  *See generally* Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo. Ex. 26, Nov. 4, 2011 Letter of D. Northwick (Wells Fargo Executive Mortgage Specialist).  All but one of Plaintiffs' applications for repayment assistance were rejected by Wells Fargo, each for a different reason (some of which Wells Fargo freely admits were factually incorrect).  *Id.*, Northwick at 3.  Among other misstatements, Wells Fargo consistently determined Plaintiffs' Loan was not eligible for HAMP modification because it was a Texas Cash-Out loan.[2]  *Id.*, Northwick at 5.

One of Plaintiffs' applications for repayment assistance resulted in an April, 2011 agreement that the Lawrences would repay their Loan in full by making payments each month that were approximately 40% larger than their original monthly payment obligation.  *Id.*, Northwick at 4.   The Lawrences defaulted on this repayment agreement in June of 2011 by making a partial payment a few days later than the agreed due date.  *Id*.  Wells Fargo canceled the repayment plan based on this default, but nevertheless continued repayment assistance negotiations, offering at least one additional "in-house" full repayment plan, conditioned on even larger monthly payments, which Plaintiffs rejected and Wells Fargo later withdrew.  *Id.*, Northwick at 5; *see also* Resp. Mot. Summ. J. [Clerks Dkt. No. 41] Ex. K, J. Lawrence Affidavit, at ¶ 89.

---

[2] A "Texas Cash Out" loan is a home equity loan that is subject to the constitutional protections in Texas Constitution, Article XVI, Section 50.

After a year of wrangling, the Lawrences sought help from their Congressman and filed a Qualified Written Request for information from Wells Fargo under RESPA. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41], Ex. K, J. Lawrence Affidavit at ¶ 92. Following these actions, Wells Fargo determined the Loan was in fact eligible for consideration under the HAMP program. Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo. Ex. 26, Northwick Letter at 5. Plaintiffs submitted a completed HAMP application on November 14, 2011. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41], Ex. K, J. Lawrence Affidavit at ¶¶ 109-111.

After receiving the application on November 14, 2011, Wells Fargo requested additional documentation on November 28, 2011. *Id.* The Plaintiffs provided the requested documentation on December 2, 2011, but Wells Fargo informed the Plaintiffs that it did not have enough time to complete review of their HAMP application before the December 6, 2011 foreclosure sale and that sale would continue as scheduled. *Id.* This position was in apparent contrast to its earlier practice: Wells Fargo had suspended scheduled foreclosure sales on short notice on at least four prior occasions because of pending repayment negotiations with Plaintiffs. *Id.* at ¶ 113; *see also* Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo. Ex. 26, Northwick Letter at 3-5.

After the sale, eviction proceedings were initiated and then dismissed. Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 5F, November 15, 2012 Letter of Emily MacMahon (Wells Fargo Executive Mortgage Specialist, Office of Executive Complaints). Plaintiffs continue to live in the house, *Id.* at Ex. 7A, No. 14. Negotiations continued between Wells Fargo and Plaintiffs concerning post-foreclosure repayment options until shortly before Plaintiffs filed their state court suit, which has been removed to this Court as described above. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] Ex. K., J. Lawrence Affidavit at ¶ 114.

**C. Causes of Action Against Remaining Defendants in Plaintiffs' Original Petition**

The motion for summary judgment concerns approximately 21 different causes of action alleged against the remaining Defendants: [3]

**Causes of Action Relating to the Validity of the Mortgage**

1. The original mortgage (on which the refinanced Loan is based) is flawed because Jennifer Lawrence's signature and Ronald Lawrence's signature are not included on various key documents and disclosures. (Orig. Pet. at ¶ 16-22).

2. WFHM, Wells Fargo, and FHLMC used predatory lending actions by gaining approval of Plaintiffs' mortgage through inflated and fraudulent appraisals. (*Id*. at ¶ 89)

3. The transfer of the original mortgage (on which the refinanced Loan is based) was not properly recorded by MERS, resulting in a break in the chain of title. (*Id*. at ¶ 25.)

**Causes of Action Relating to Mortgage Modification and Repayment Negotiations**

4. Wells Fargo, WFHM, and FHLMC committed violations of the Deceptive Trade Practices Act. (*Id*. at ¶ 58-62)

5. WFHM and Wells Fargo committed "numerous violations" of the Truth in Lending Act. (*Id*. at ¶ 93)

6. WFHM falsely stated Defendants had made a diligent examination of Plaintiffs' documents in a letter to the Attorney General's Office because they mis-named

---

[3] The undersigned notes that Defendants WFHM and Wells Fargo have merged, and Defendants refer to "Wells Fargo" as the entity responsible for interactions with Plaintiff. Mot. Summ. J. [Clerk's Dkt. No. 39] at n.1. Accordingly, the undersigned will refer to both WFHM and Wells Fargo as "Wells Fargo," following Defendants' practice, in this Report and Recommendation.

Plaintiffs as "Schwimmer," instead of "Lawrence" through a portion of the letter. (*Id*. at ¶ 73.)   Additionally, WFHM violated Plaintiff's privacy "if in fact" a similar mistake was made disclosing the Lawrences' name instead of another borrower's in another such letter.  (*Id.*)

7.  Wells Fargo and WFHM have failed to respond fully to Plaintiffs' October 4, 2011 "Qualified Written Request" under RESPA. (*Id.* at ¶ 67)

8.  Wells Fargo and WFHM violated the Servicers' Participation Agreement between WFHM and the federal government by failing to allow Plaintiffs to be considered for a  HAMP modification.  (*Id*. at ¶ 100).

9.  Wells Fargo and WFHM committed fraudulent misrepresentation during the HAMP application process. (*Id.* at ¶ 101)

10.  WFHM and Wells Fargo fraudulently induced Plaintiffs to enter into a repayment plan. (*Id.* at ¶ 94-95, 106)

11.  Wells Fargo and WFHM made various false statements to the Lawrences regarding whether the pending foreclosure had been rescinded and a second repayment plan approved. (*Id*. at ¶ 96, 107)

12.  Wells Fargo and WFHM acted "unconscionably" after admitting the mortgage could be HAMP-eligible by refusing to review Plaintiffs' completed HAMP application materials before foreclosing on the Property.  (*Id*. at  ¶ 104).

## Causes of Action Relating to the Foreclosure

13.  Wells Fargo, WFHM, and FHLMC wrongfully used a non-judicial foreclosure procedure. (*Id.* at ¶¶ 64, 77-80, 102-103, 105, 109)

14.  Wells Fargo, WFHM, and FHLMC failed to provide a valid First Notice to

Accelerate prior to notice of the non-judicial sale. (*Id.* at ¶¶ 65, 103)

15. Wells Fargo, WFHM, and FHLMC are estopped from foreclosing on the Property based on a theory of promissory estoppel under Texas law.  (*Id.* at ¶ 112)

## Causes of Action Relating to Defendants' Post-Foreclosure Conduct

16. FHLMC wrongfully filed a Forcible Detainer action based on a wrongful foreclosure. (*Id.* at 110)

17. Wells Fargo, WFHM, and FHLMC retained a law firm to finalize their loss mitigation review while at the same time retaining a different firm to pursue a forcible detainer action against Plaintiffs. (*Id.* at ¶¶ 98-99)

18. FHLMC's complaint for Forcible Detainer in the County Court at Law in Hays County, Texas, seeking possession of the Property, is based on an improper foreclosure sale and constitutes a wrongful cloud on Plaintiffs' title.  (Plaintiffs have filed a lis pendens in the same County Court concerning the Property.)

19. FHLMC's complaint for Forcible Detainer fails to name Jennifer Lawrence and should therefore be limited to a claim on only 50% possession and interest in the Property. (*Id.* at ¶ 81)

20. Wells Fargo and WFHM made various false statements to the Lawrences regarding the timing of Defendants' dismissal of the eviction proceedings, whether the foreclosure had been rescinded, and on what terms further modification negotiations might take place. (*Id.*  at ¶¶ 68-71).

21. Defendants would be unjustly enriched under Texas law by obtaining possession of the Property.  (*Id.* at  ¶ 112).

**D.  Claims Asserted In Response and Motion for Leave to File Supplemental Petition**

Defendants assert Plaintiffs are raising additional, unplead claims that should be rejected as untimely.  First, Defendants assert Plaintiffs have never plead the argument, raised in their Response to the Motion for Summary Judgment, that the Loan is void because Ms. Lawrence failed to sign key documents in the original mortgage.  Reply Mot. Summ. J. [Clerk's Dkt. No. 43] at 4.  The Court is under no duty to consider previously unplead claims made for the first time in response to a motion for summary judgment.  *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005).  Plaintiffs' exhaustive Original Petition does allege, however, that the original loan is defective because of Ms. and Mr. Lawrence's failure to sign various key documents.  (Orig. Pet. at ¶ 16-22).  Therefore, the claim that the defective original loan never created an indebtedness on the refinanced Loan will be considered on its merits.

Plaintiffs additionally seek leave to file a "Supplemental Petition" [Clerk's Dkt. No. 42] alleging the following additional claims and requests for relief:

1. Declaratory judgment that Defendants do not hold a valid lien against the homestead and the foreclosure should be voided;

2. Common law fraud based on Defendants' alleged misstatements concerning whether Plaintiffs' loan was eligible to be considered for a HAMP modification;

3. Breach of contract and breach of the duty of good faith and fair dealing based on Defendants' alleged breach of its post-foreclosure promise to consider additional loan modifications;

4. An agency theory of relief attributing the actions of Defendants' individual employees to the Defendants;

5. Economic and actual damages (not plead in any particular amount).

*Id.*   The undersigned notes that none of these claims are based on different underlying facts than the 21 separate claims alleged against Defendants in Plaintiffs' Original Petition, enumerated above, and therefore do not meet the criteria for supplemental pleadings set out in Federal Rule of Civil Procedure 15(d) (allowing supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.")  Even examining the proposed supplemental pleading under the more lenient standard of Rule 15(a), which instructs that leave to amend should be freely granted, the undersigned is of the opinion leave should be denied in this case because the proposed supplemental pleading is untimely and would prejudice defendants by introducing a new breach of contract claim and requests for new alternative remedies after the deadline for dispositive motions in this case has already passed. *See Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (denying a motion for leave to amend filed contemporaneously with opponent's motion for summary judgment).   In particular, Plaintiffs' proposed new "breach of contract" claim, which is based on language seized from the legal argument in Defendant's Motion for Summary Judgment concerning Defendants' "understanding" that the foreclosure would be rescinded if the Plaintiffs applied and qualified for a repayment assistance package, (Mot. Leave [Clerk's Dkt. No. 42] at 5, citing Mot. Summ. J. [Clerk's Dkt. No. 39] at 10), seems designed to "require additional discovery and another motion for summary judgment, which would unduly prejudice the defendants and raise concerns about seriatim presentation of facts and issues."  *Id.*   Therefore, the undersigned RECOMMENDS the Court DENY Plaintiffs' motion for Leave to File Supplemental Petition [Clerk's Dkt. No. 42].

## II.  APPLICABLE LEGAL STANDARDS

### A.  Standard of Review For Motion for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87,106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Id*.

13

### 1.  Motion For Continuance of Summary Judgment

Plaintiffs move for a continuance on Defendants' Motion for Summary Judgment on the grounds that "discovery has not been completed."  Resp. to Mot. Summ. J. [Clerk's Dkt. 39] at 2. Federal Rule of Civil Procedure 56(d) authorizes the Court to defer considering a motion for summary judgment and/or allow additional time to take discovery if the non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  No such affidavit or declaration is appended to request for continuance.  *See generally* Resp. Mot. Summ. J. [Clerk's Dkt. No. 39].

Plaintiffs have not specified what, if any, discovery has not been completed or under what agreement or authority they propose to seek additional discovery in this matter.  The current Scheduling Order in this case indicates the deadline to complete discovery was December 19, 2014. Order of February 4, 2014 [Clerk's Dkt. 22] at ¶ 6.  Plaintiffs' Response to the Motion for Summary Judgment [Clerk's Dkt. 41] was filed January 26, 2015, well over a month after the close of discovery.  The Scheduling Order permits the parties to extend discovery by agreement, but does not allow the parties to change the deadline to file dispositive motions without leave of court.  Order of Feb. 4, 2014 [Clerk's Dkt. 22] at ¶¶ 6, 8. [4]

A party moving to continue a summary judgment motion on the basis that additional time is needed to obtain discovery to respond must show (1) why it is currently unable to present evidence creating a genuine issue of fact, and (2) how a continuance would enable the party to present such evidence.  *Baker*, 430 F.3d. at 756 (citing FED. R. CIV. P. 56(f)).  Plaintiffs have

---

[4] Defendants' Response to Plaintiffs' Motion for Leave [Clerk's Dkt. # 46] suggests that perhaps the parties have reached some agreement extending discovery for another two months.  *Id.* at 3.  Even if this is the case, however, "in a motion to extend the time to respond to a motion for summary judgment, the simple claim that discovery has not closed is insufficient."  *Baker v. Am. Airlines, Inc.*, 430 F.3d. 750, 756 (5th Cir. 2005).

neither identified any specific discovery they seek, nor explained how any specific, yet-to-be-obtained discovery can establish a genuine issue of material fact with regard to their claims.

Plaintiffs' case was pending in federal court, with all the discovery tools available under the federal rules, for over a year before the deadline for dispositive motions set in the Scheduling Order.  Order of February 4, 2014 [Clerk's Dkt. 22] at ¶ 7.  Under these circumstances, no continuance to obtain additional discovery is warranted by Rule 56(f) and the undersigned RECOMMENDS the Court DENY Plaintiffs' Motion for Continuance (contained in Plaintiffs' Response to Motion for Summary Judgment [Clerk's Dkt. 41]).

### 2.  Motion to Strike Summary Judgment Evidence

Plaintiffs object to the use of Jennifer Lawrence's deposition testimony as summary judgment evidence on the grounds that her deposition was "never finished."  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 2.  Plaintiffs assert the reporter never stated on the record that the deposition was complete and that the witness never received the opportunity to make changes to her deposition testimony.  Reply Mot. Strike [Clerk's Dkt. No. 47] at 2.

With regard to Plaintiffs' objection that the reporter did not pronounce specific words on the record necessary to render the deposition complete, nothing in Federal Rule of Civil Procedure 30(b)(5)(C) sets out "magic words" that must be recited to close a deposition. Moreover, to the extent Plaintiffs object to the conduct of the reporter in the manner of taking the deposition, transcribing the deposition, or "otherwise deal[ing] with the deposition," such objections are waived if not stated promptly—either during the deposition or promptly after the error could have, with reasonable diligence, been discovered.  FED. R. CIV. P. 32(d)(3), 32(d)(4). The Plaintiffs' technical objection to the reporter's failure to state that the deposition was over

should have been made at the time the supposed error occurred.   *Id.*   At this late juncture, it is

waived. *Id.*

      With regard to Plaintiffs' objection that Ms. Lawrence received no opportunity to review

and change her testimony, the undersigned notes Plaintiffs have not specified what, if any,

changes Ms. Lawrence would have made.   Indeed, the excerpted deposition testimony filed as

Exhibit 8 of Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] is largely

consistent with the Affidavit of Jennifer Lawrence filed as Exhibit K of Plaintiffs' Response

thereto [Clerk's Dkt. No. 41].   Moreover, Defendants have provided copies of the email

transmissions of the deposition, witness change and signature pages, and reporter's certification,

showing that Ms. Lawrence's attorney received her deposition and had the opportunity to

forward it to her for review and signature.   Surreply Mot. Strike [Clerk's Dkt. No. 50], Ex A.1,

A.2.   Finally, the deposition excerpts include the stipulation "[t]hat the witness or the witness'

attorney will return the signed transcript to the court reporter within 30 days of the date the

transcript is provided to the witness' attorney.   If not returned, the witness may be deemed to

have waived the right to make the changes, and an unsigned copy may be used as though

signed."   Mot. Summ. J. [Clerk's Dkt. 39], Ex. 8 at 4.   Plaintiffs themselves have provided a

copy of the Reporter's Certification authenticating Ms. Lawrence's deposition testimony.   Reply

Mot. Strike [Clerk's Dkt. 47], Ex. A, pp. 290-293. It therefore appears Plaintiffs have waived any

objection they may have had to the use of an unsigned or unreviewed deposition.   The

undersigned therefore RECOMMENDS the Court DENY Plaintiffs' Motion to Strike (contained

within Plaintiffs' Response to the Motion for Summary Judgment [Clerk's Dkt. 41]).

## III.  ANALYSIS AND DISCUSSION

### A. Plaintiffs Have Failed to Impeach the Validity of the Mortgage

The undersigned, on review of Plaintiffs' Original Petition, understands the majority of Plaintiffs' claims regarding defects and improprieties in the origination of the mortgage to be asserted against defendants who have previously been dismissed, with the exception of the claims discussed in further detail below.  Plaintiffs have not alleged any facts or provided any summary judgment evidence to show the remaining Defendants played any role in events prior to Wells Fargo's stepping in as the servicer of the loan in 2008.  *See generally*  Orig. Pet. at ¶¶16-112.

In an abundance of caution, however, Defendants have presented argument pointing out that the statutes of limitations applicable to Plaintiffs' various claims would bar relief against them for any claimed malfeasance in the origination of the home mortgage in 2004 or the negotiation of the refinanced Loan in 2007-2008.  Mot. Summ. J. [Clerks' Dkt. No. 39] at 5.  The undersigned agrees that, to the extent Plaintiffs are asserting claims for RESPA violations, TILA violations, negligence or negligent misrepresentation, promissory estoppel, fraud, DTPA, and unjust enrichment claims against the remaining Defendants arising out of the origination of the 2004 home mortgage or the negotiation of the 2007-2008 refinanced Loan, any such claims are time barred.  *See id.* (collecting statutes of limitations).  Plaintiffs, however, raise several claims relating the validity of the original loan—and by extension, the refinanced Loan that is the subject of this dispute—that must be addressed in further detail.

#### 1.  Defects in the Original Loan are Time Barred

Plaintiffs contend the Loan that is the subject of the current dispute is not a "Texas Cash

Out" or home equity loan, subject to protections under the State Constitution, but they do claim their original loan, refinanced by the disputed Loan, was entitled to such State Constitutional protections. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 7. Plaintiffs assert the Texas Constitution "provides special protections for the homestead, separate and distinct from those protections given other kinds of property." *Id.* (citing Tex. Const. art. XVI, § 50). These protections include the requirement that both spouses sign any contract to fix a lien on a homestead arising out of improvements to the property. Tex. Const. art XVI, § 50(a)(5)(A); TEX. PROP. CODE § 53.254.

It is doubtful that these protections apply to the original loan underlying the refinanced Loan in this case, because it was not a home equity loan, but a construction loan. Orig. Pet. at ¶¶ 9-14. Nevertheless, Plaintiffs argue "Jennifer Lawrence never signed the prior note to Advantage One Mortgage on February 16, 2007, so there was no indebtedness to renew on July 11, 2008, . . . . Under Texas law, the Wells Fargo lien does not attach to the homestead property of the Plaintiffs." Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 9.

Even assuming the 2007 loan from Advantage One Mortgage was a loan to which the protections of Texas Constitution, Article XVI, Section 50(a) attach, "liens that are contrary to the requirements of § 50(a) are voidable rather than void from the start," *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673, n.4 (5th Cir. Tex. 2013). Therefore, Plaintiff's claims— even their Texas constitutional claims—regarding alleged defects in their original lien are subject to Texas' four-year residual statute of limitations. *Id.* at 673; TEX. CIV. PRAC. & REM. CODE § 16.003. The four-year statute of limitations regarding violations of the constitutional requirements for home equity loans is calculated from the date of closing on the loan. *Priester*, 708 F.3d at 673 (citing *Schanzle v. JPMC Specialty Mortg. LLC*, No. 03-09-00639-CV, 2011

18

Tex. App. LEXIS 1748 at *4 (Tex. App.—Austin Mar. 11, 2011, no writ)).

For the Lawrences, the four-year limitations period would have run from February 16, 2007, the date Ms. Lawrence failed to sign the closing documents on the Advantage One Mortgage Loan. *Id.* Any claims relating to defects in this loan should have been asserted on or before February 16, 2011. TEX. CIV. PRAC. & REM. CODE § 16.003. Plaintiffs filed suit on September 27, 2013, long after these claims had expired. Therefore, the undersigned RECOMMENDS this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] with regard to Plaintiffs' claims that the disputed Loan is void because of defects in the underlying, refinanced loan.

### 2. Predatory Lending is Not a Cause of Action in Texas

In the alternative, Plaintiffs argue the mortgage is invalid because WFHM, Wells Fargo, and FHLMC "utilized predatory lending actions against Plaintiff(s) gaining approval of Plaintiff(s)' mortgage through inflated and fraudulent appraisals." Orig. Pet. at ¶ 89. As a threshold matter, no Texas court has recognized an independent cause of action for "predatory lending." *Williams v. Chase Home Fin., LLC,* No. 3:13-CV-1307-G, 2014 U.S. Dist. LEXIS 133451, *22-23 (N.D. Tex. Aug. 27, 2014) (collecting cases).

Moreover, to the extent "predatory lending" can be considered shorthand for fraud or fraudulent inducement to enter into the mortgage, such a claim would have accrued at the time the Defendants allegedly provided false appraisals for the Plaintiffs' reliance—i.e., at the time Plaintiffs closed on the refinanced mortgage in 2008. *Hunton v. Guardian Life Ins. Co*., 243 F. Supp. 2d 686, 702 (S.D. Tex. 2001). The statute of limitations for fraud claims in Texas is four years, TEX. CIV. PRAC. & REM. CODE § 16.004, and therefore any claim Plaintiffs may have had

regarding fraudulent inducement into the 2008 refinancing would have expired, at the latest, July 11, 2012, over a year before they filed suit in this matter.[5]  Because Plaintiffs have failed to state a valid cause of action for predatory lending or any Texas analogue thereof, the undersigned RECOMMENDS this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] with regard to Plaintiffs' claims of predatory lending.

### 3.  There Was No Break In the Chain Of Title

Plaintiffs allege the transfer of the original mortgage (on which the refinanced Loan is based) was not properly recorded by MERS, resulting in a break in the chain of title.  (Orig. Pet. at ¶ 25.)  An Assignment of Deed is not required to be recorded. *Bittinger v. Wells Fargo Bank NA,* 744 F. Supp. 2d 619, 625 (S.D. Tex. 2010).  Moreover, a borrower generally lacks standing to challenge the validity of an assignment from one lender to another, as the borrower is not a party to that assignment.  *Id.* at 625-26.  Because Plaintiffs lack standing to challenge the assignment of the mortgage and no technical deficiency invalidated the chain of title, the undersigned RECOMMENDS this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] with regard to Plaintiffs' claim that an invalid recording broke the chain of title.

The undersigned further notes the alleged defect in recording the assignment of the

---

[5] Even without these defects in their "predatory lending" claims, Plaintiffs have presented no evidence to suggest that Wells Fargo (and its merged subsidiary, WFHM) or FHLMC did anything to "gain[] approval of Plaintiff(s)' mortgage" using the allegedly defective appraisals.  Orig. Pet. at ¶89.  The undisputed facts are that the mortgage was entered into by Home Financing, Unlimited, Inc.  Mot. Summ. J. [Clerk's Dkt. 39], Ex. 1.  Wells Fargo did not even become the mortgage servicer on the loan until September of 2008, well after its terms and conditions had been finalized.  *Id.* at Ex. 7B.  Wells Fargo's assumption of the Loan in 2011 did not change any of its terms and conditions.  *Id.* at Ex. 2.  Similarly, FHLMC's only interaction with Plaintiffs' Loan was the purchase of the Property at the December 6, 2011 foreclosure sale.  *Id.*at Ex. 4.  There is no evidence that any of these Defendants induced Plaintiffs to approve the terms of the mortgage based on an inflated appraisal.

mortgage is the only conduct of MERS challenged by Plaintiffs in any respect, and therefore the undersigned RECOMMENDS this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] on all claims against MERS.

**B. The Modification Negotiations Were Admittedly Flawed**

Plaintiffs assert a variety of theories of liability stemming from Wells Fargo's misstatements and mishandling of Plaintiffs' multiple applications for a federal HAMP loan modification.  Wells Fargo unabashedly admits it misrepresented that Plaintiffs had a non-HAMP eligible "Texas Cash Out" loan for months, even though the Loan documentation contains a stand-alone clause clearly stating "The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution."  Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 1, Deed of Trust at ¶ 28.

Wells Fargo further admits it gave Plaintiffs inaccurate information about why their application for repayment assistance was denied and incorrectly told them that their only option for loan assistance was an in-house "full repayment" plan that demanded monthly payments 40% higher than Plaintiffs' original payments (whereas a HAMP modification is aimed at reducing monthly payments), *Id.*, Ex. 8, Depo Ex. 26, Northwick Letter at 4.  Wells Fargo further admits that, when Plaintiffs defaulted on this full repayment plan, Wells Fargo offered—and then withdrew—another in-house full repayment plan that demanded even higher monthly payments. *Id.*

Wells Fargo admitted the Lawrences' loan was in fact eligible for HAMP consideration only after Plaintiffs reached out to their Congressman and the Texas Attorney General, and filed a Qualified Written Request pursuant to RESPA.  *Id.*  Wells Fargo provided a HAMP application

on November 5, 2011, which Plaintiffs completed and returned on November 14, 2011.  Resp.

Mot. Summ. J. [Clerk's Dkt. 41] Ex. K, J. Lawrence Affidavit at ¶ 109.

Wells Fargo had a foreclosure sale scheduled for December 6, 2011, some 22 days after

the Lawrences returned their HAMP application on November 14, 2011.  *Id. See also* Mot.

Summ. J. [Clerk's Dkt. No. 39] Ex. 5F, E. McMahon Letter of February 15, 2012, at 2. Wells

Fargo had previously postponed multiple scheduled foreclosure sales on short notice to

accommodate further negotiations concerning its in-house full repayment plans with the

Lawrences.  *Id.*, McMahon Letter at 2; *see also id.* at Ex. 8, Depo. Ex. 26, Northwick Letter at 3-

5.  Furthermore, the terms of Wells Fargo's Service Provider Agreement (SPA) concerning the

federal HAMP program likely *required* Wells Fargo to suspend the foreclosure sale until

resolving the issue of whether the timely filed application was HAMP-eligible.[6]  Nevertheless,

instead of finally evaluating the Lawrences' HAMP application, Wells Fargo proceeded with the

sale, stating it did not have enough time to review documentation received on December 2, 2014,

---

[6] While the Lawrences lack standing to enforce the provisions of the SPA, *see infra*, Section III.B.5, Wells Fargo's contractual obligations under the SPA are public documents that the Court may consider *sua sponte* as evidence relevant to Defendants' alleged intentions regarding the negotiation of the Lawrences' loan modification. FED. R. EVID. 201.  The Treasury has posted the terms of its SPA with Wells Fargo, signed by a Treasury representative, on the official www.treasury.gov website, as a self-authenticating public document. FED. R. EVID. 902.  *See* Amended and Restated Commitment to Purchase Financial Instrument and Server Participation Agreement ("SPA") between Wells Fargo, Fannie Mae, and Freddie Mac (as designees of the U.S. Treasury), March 19, 2010, *available at* http://www.treasury.gov (last visited March 18, 2015).

The SPA obligates Wells Fargo to abide by the directives of the MHA Handbook, including the following: "When a servicer receives an Escalated Case . . . no later than midnight of the seventh business day prior to the foreclosure sale date (Deadline), the servicer **must suspend the sale** as necessary to resolve the Escalated Case."  MHA Handbook § 3.4.2. (emphasis added), *available at* https://www.hmpadmin.com  (last visited March 18, 2015). Receipt of the Lawrences' HAMP application on November 14, 2011 likely triggered this suspension obligation, and the terms of the SPA and the MHA Handbook dictated that this November 14, 2011, application, including the later-requested, supplemental information received December 2, 2011, should have been considered before the foreclosure sale proceeded.  *See id.*

While not an obligation Plaintiffs can enforce, Wells Fargo's decision to proceed with foreclosure before considering the HAMP application, despite the terms of the SPA and MHA Handbook, is circumstantial evidence which may be relevant to whether Plaintiffs have raised a fact issue regarding their various misrepresentation and fraud claims.  *See  JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 461 (Tex. App.—Houston [14th Dist.] 2014 (citing *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774-75 (Tex. 2009) (circumstantial evidence of intent or recklessness may be sufficient to support a fraud finding).

to supplement the HAMP application.  *Id.*, McMahon Letter at 2; *see also* Resp. Mot. Summ. J. [Clerk's Dkt. 41] Ex. K, J. Lawrence Affidavit at ¶ 113.

Wells Fargo admits these and other mistakes, untruths, and acts of negligence towards the Plaintiffs.  And why not?  Wells Fargo can afford to be utterly candid about its malfeasance because Defendants contend the law does not currently recognize a cause of action that would render their treatment of Plaintiffs unlawful.

### 1.  Plaintiffs Are Not Consumers Under the Deceptive Trade Practices Act

Plaintiffs claim Defendants' conduct in the loan modification negotiations violates Texas' Deceptive Trade Practices Act (DTPA).  TEX. BUS. & COM. CODE ANN. § 17.45 *et seq.*  To have standing to sue under the DTPA, a plaintiff must demonstrate she was a "consumer."  *Cook Pizzi v. Van Waters & Rogers, Inc*., 94 S.W.3d 636, 644 (Tex. App.—Amarillo 2002, writ denied); *Rayford v. Maselli*, 73 S.W.3d 410, 411 (Tex. App.—Houston [1st Dist.] 2002, no writ); *Bohls v. Oakes*, 75 S.W.3d 473, 478 (Tex. App.—San Antonio 2002, writ denied). The DTPA defines a consumer as an individual "who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4).  To qualify as a consumer, a plaintiff (1) must seek or acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint.  *Sherman Simon Enters., Inc. v. Lorac Serv. Corp*., 724 S.W.2d 13, 14 (Tex. 1987); *Flenniken v. Longview Bank & Trust Co*., 661 S.W.2d 705, 707 (Tex. 1983).

The Texas Supreme Court has clearly held that a person who seeks only to borrow money is not a consumer under the DTPA because money is not a good or a service.  *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex. 1980).  Plaintiffs nevertheless contend they are consumers because they borrowed money in order to finance construction of their home and a

pool on the Property, and those goods and services were the objective of the transaction.  *See Security Bank v. Dalton,* 803 S.W.2d 443, 452-53 (Tex. App.—Fort Worth 1991, writ denied) (loans taken for purpose of constructing and furnishing funeral home "were clearly taken in connection with the sale of a good or service and thus qualify appellees as consumers under DTPA").   But Plaintiffs' complaints do not center on their original construction loan; Plaintiffs complain of attempts to modify and restructure their 2008 refinancing Loan.   In other words, "the plaintiff[s] had already obtained a home through a separate transaction, and the ultimate goal of the loan modification was a loan of money, though on different terms than the current mortgage."  *Montalvo v. Bank of America Corp.*, 864 F.Supp. 2d 567, 576 (W.D. Tex. March 30, 2012).   Thus, "[i]n this case, the end and aim of Plaintiffs' dealings with Defendants was to obtain a loan modification of an already existing loan. Defendants' [interactions with Plaintiffs concerning review of the modification applications were] ancillary services that served no purpose apart from facilitating a loan modification of an existing loan."  *Pennington v. HSBC Bank USA*, N.A., A-10-CA-785-LY, 2011 U.S. Dist. LEXIS 147411, *22 (W.D. Tex. Dec. 22, 2011).   Plaintiffs cannot be considered consumers under the Texas DTPA, *id.*, and therefore the undersigned RECOMMENDS that this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] with regard to Plaintiffs' DTPA claims.[7]

---

[7] Defendants alternatively argue the DTPA's 2-year statute of limitations bars Plaintiffs' claims.  Mot. Summ. J. [Clerk's Dkt. 39] at 5.  Plaintiffs brought suit on this matter on September 27, 2013. To the extent the Defendants' "services" in offering an unaffordable, in-house loan modification in October of 2011 (and then immediately withdrawing it), falsely evaluating Plaintiffs' October, 2011 HAMP application as ineligible for consideration,  and foreclosing on Plaintiffs' property before considering their admittedly eligible November, 2011 HAMP application could be considered "services" sufficient to confer on Plaintiffs consumer status under the DTPA, the undersigned has no trouble concluding there are issues of material fact as to Defendants' conduct within the two year limitations period from September of 2011.

Well-reasoned case law, however, persuasively forecloses this argument. *Montalvo*, 864 F.Supp.2d at 579.  The *Montalvo* court explains that services provided by the loan servicer participating in government programs for home owners pursuing loan modificiation are not services obtained by purchase or lease, as required by the DTPA. *Id.* Particularly where, as here, the loan servicer is also the holder of the note, any services provided in the course of

**2. No Truth in Lending Act Claims Survive Against Defendants**

Plaintiffs do not specify what provisions of the Truth in Lending Act (TILA) have allegedly been violated or what conduct by Defendants allegedly violated the statute. Moreover, Wells Fargo, as the servicer of Plaintiffs' Loan, is not subject to liability under TILA. 15 U.S.C. § 1641(f). As the assignee of Plaintiffs' Loan, Wells Fargo may inherit TILA claims arising out of the origination of the loan. *Id*. at § 1641(d)(1). Such inherited TILA liability, however, must have been "apparent on the face of the disclosure statement" to the assignee. *Id.* at § 1641(a). Plaintiffs have presented no evidence of any specific claims or defenses available to them under TILA, nor any evidence of how such TILA liability would have been apparent to Wells Fargo at the time it assumed the Loan. Moreover, any such assigned liability remains subject to the one- and three-year statutes of limitations set out in 15 U.S.C. § 1640(e). Thus, the statute of limitations on any claims arising out of improper terms or improper conduct in the origination of the loan would have expired, at the latest, in 2011, well before the Lawrences brought suit. Accordingly, the undersigned RECOMMENDS that this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] on Plaintiffs' Truth in Lending Act (TILA) claims.

**3. Plaintiffs Lack Standing to Assert Breaches In the Letter to the Attorney General**

Plaintiffs are undoubtedly correct that Defendants' use of the name "Schwimmer" to refer to the debtor in a letter reassuring the Texas Attorney General that Wells Fargo had carefully reviewed the *Lawrences*' file is improper on multiple levels. At a minimum, it suggests a misrepresentation to the Attorney General's office regarding the scope and diligence of Wells Fargo's review. Additionally, to the extent Wells Fargo inadvertently disclosed financial information relating to the indebtedness of a different individual Wells Fargo customer, that

---

evaluating a loan modification are ancillary to the Bank's decision whether to modify a loan it owns, and are not services to the borrower that would confer consumer status. *Id.*

customer's privacy rights may well have been violated.  The right to seek redress for these wrongs, however, does not lie with the Lawrences.  *Fontenot v. McCraw*, 777 F.3d 741 (5th Cir. Tex. 2015) ("Article III standing to sue requires that a plaintiff has suffered injury (a) to a legally protected interest, and that is actual or imminent, concrete and particularized; (b) that is fairly traceable to the challenged action of the defendant; and (c) that is redressable by the court.")  The legally protected interests allegedly injured here are those of the Attorney General, the entity that requested information and received misinformation, and the wrongly identified Wells Fargo customer, whose privacy rights are at stake.  *See id.*  Thus, the undersigned RECOMMENDS the Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] on Plaintiffs' misrepresentation and breach of privacy claims arising out of Defendants' communication to the Texas State Attorney General.

### 4.  Plaintiffs Have Not Identified Any Deficiency in Defendants' RESPA response

On October 3, 2011, Plaintiffs sent Wells Fargo a Qualified Written Request pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e) *et seq.*  Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 5D.  Wells Fargo was obligated to respond, in writing, within 60 days after receipt.  12 U.S.C. § 2605(e)(2).   A November 4, 2011 letter from David Northwick, which contained several attachments relevant to Plaintiffs' RESPA request, is specifically identified as the response to the Qualified Written Request. Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo. Ex. 26.  Plaintiffs have identified no statutory deficiencies in this response. Therefore, the Undersigned RECOMMENDS this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] with regard to Plaintiffs' RESPA claims.

### 5.  Plaintiffs' Negligence, Good Faith, and Breach of the SPA Claims Lack Standing

Wells Fargo does not even bother to argue it acted with reasonable care, exercised good

faith toward the Lawrences, or maintained compliance with its obligations under the Service Provider Agreement (SPA) concerning the federal HAMP program.  Indeed, the summary judgment evidence introduced **by Defendants** suggests Wells Fargo could not make any of these arguments and fulfill its duty of candor to the tribunal.        *See, e.g.*, Mot. Summ. J. [Clerk's Dkt. No. 39, Ex. 1 (Deed of Trust), and Ex. 8 at Depo Ex. 26 (Northwick Letter).

Wells Fargo admits that it misidentified Plaintiffs' mortgage as a "Texas Cash Out" loan—a home equity loan, ineligible for HAMP modification consideration—for over a year, despite clear and unambiguous language in bold-face type in the Deed of Trust, stating "**Loan Not A Home Equity Loan**." Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 1; Ex. 8 (Depo Ex. 26), Northwick Letter at 5.  Such a blatant failure to read the plain language of the Note can fairly be called negligent, but under Texas law, the relationship between a lender and a borrower "does not give rise to any duty that would support a negligence claim," much less a duty of good faith and fair dealing, *Omrazeti v. Aurora Bank FSB,* No. SA:12-CV-00730-DAE, 2013 U.S. Dist. LEXIS 88644, *31 (W.D. Tex. June 25, 2013).

The SPA requires Wells Fargo to perform mortgage modification evaluations "in accordance with the practices, high professional standards of care, and degree of attention used in a well-managed operation, and no less than that which the Servicer exercises for itself under similar circumstances."  SPA Ex. B, § 5D, *see supra,* n.4.  Yet to the extent such an obvious failure to read the basic terms of the Deed of Trust breaches Wells Fargo's contractual obligation under the SPA to use the "degree of attention used in a well-managed operation," *id.*, the Lawrences lack standing to challenge the breach because they are neither parties to nor third party beneficiaries of that contract.  *Wildy v. Wells Fargo Bank, N.A.*, No. 3:12-CV-01831-BF, 2013 U.S. Dist. LEXIS 9361, *8-10 (N.D. Tex Jan. 21, 2013) (collecting cases).  Moreover,

current case law recognizes no private right of action for a borrower to enforce any provision of HAMP.  *Id.* (collecting cases).

Because Plaintiffs lack standing to pursue negligence, good faith, and breach of contract claims arising from the Defendants' handling of the loan modification negotiations, the undersigned RECOMMENDS that this Court GRANT Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] on Plaintiffs' claims for negligence, breach of contract, and breach of the duty of good faith and fair dealing.

### 6. Plaintiffs' Misrepresentation and Fraud Claims Do Not Flow From the Contract

Defendants contend any fraud or misrepresentation-based claims arising out of their multiple, admitted misstatements to Plaintiffs over the course of the loan modification negotiations are essentially just repackaged contract claims, and therefore (a) are barred by the statute of frauds, (b) are barred by the economic loss rule, and (c) lack the essential element of justifiable reliance by Plaintiffs.  Mot. Summ. J. [Clerk's Dkt. 39] at 5.  The undersigned disagrees.

While negligent misrepresentation claims do fall to the economic loss rule in these circumstances, *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. Appx. 861, 865 (5th Cir. Tex. 2013), Plaintiffs' fraud and fraudulent inducement claims require closer review.  The elements of fraudulent misrepresentation in Texas are "(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker either 'knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;' (4) the speaker made the representation with the intent that the other party act upon it; (5) the party in fact acted in reliance on the representation; and (6) the party suffered injury as a result."  *Chong Choe v. Bank of Am.*, N.A., No. 14-10826, 2015 U.S. App. LEXIS 4741, *16 (5th Cir. 2015)

(citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)). The "'who, what, where, and how' of the purported fraud" must be plead with particularity. *Cuevas v. BAC Home Loans Servicing, LP*, No. 4:10-CV-31, 2012 U.S. Dist. LEXIS 134824, *16-19 (S.D. Tex. Sept. 19, 2012) (citing *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). Here, Plaintiffs have provided an exhaustive pleading detailing Defendants' alleged misstatements, and supported those allegations with affidavit testimony detailing who told them what, and where/when/how those representations were made to them.[8] *See generally*, Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at Ex. J, R. Lawrence Affidavit, *id.* at Ex. K, J. Lawrence Affidavit.

The Fifth Circuit has recently held that affidavit testimony of the plaintiffs, standing alone, is insufficient to establish a material fact issue to defeat summary judgment on fraud claims, because such affidavit testimony "necessarily can speak only to the [Plaintiffs'] perceptions of [the Defendants'] knowledge and the company's intentions with regard to [the Plaintiffs'] loan" and cannot establish the Defendants knew their statements were false or made the statements with reckless disregard for the truth. *Chong Choe*, 2015 U.S. App. LEXIS 4741 at *16. This recent holding does not, however, disrupt longstanding Texas case law that competent circumstantial evidence of intent or recklessness may be sufficient to support a fraud finding. *JJJJ Walker, LLC v*, 447 S.W.3d at 461 (citing *Aquaplex, Inc.*, 297 S.W.3d at 774-75.

"[A] party's intent is determined at the time the party made the representation, [but] it

---

[8] Defendants note that "Plaintiffs' affidavits are curiously similar, with references to them both taking the same actions," a point that is not lost on the undersigned. This goes to the weight, not the admissibility, of the affidavit evidence, however, and the undersigned finds that Ms. Lawrence's affidavit, in particular, is consistent with her deposition testimony and the account of events provided by Defendants' own representatives, David Northwick and Emily McMahon. *Compare* Resp. Mot. Summ. J. [Clerk's Dkt. 41] Ex. K, J. Lawrence Affidavit, with Mot. Summ. J. [Clerk's Dkt. 39] Ex. 8, J. Lawrence Depo and Depo Ex. 26, D. Northwick Letter of November 4, 2011, and Ex. 5F, McMahon Letter of February 15, 2012. In light of the consistency between these disparate pieces of evidence (three of which were introduced by Defendants), the undersigned finds the affidavit of Ms. Lawrence to be competent summary judgment evidence that is credible enough to raise material fact issues.

may be inferred from the party's subsequent acts after the representation is made." *Aquaplex, Inc.*, 447 S.W. 3d at 774-75.  In the case before this Court, Defendants themselves have admitted they made material misstatements from the very beginning of Plaintiffs' repayment assistance negotiations.  *See generally* Def's Mot. Summ. J. [Clerk's Dkt. No. 39], Ex. 5F, Letter of E. McMahon; *id.* at Ex. 8, J. Lawrence Depo. Ex. 26, November 4, 2011 letter of D. Northwick. Moreover, circumstantial evidence of the Defendants' state of mind can be drawn from conduct and circumstances—such as their blatant disregard for the plain language of the Deed of Trust— that evidence intentional misstatements or reckless disregard for the truth.  *See Italian Cowboy Partners,* 341 S.W.3d at 339 (finding that, based on the circumstances surrounding the allegedly fraudulent statements, "legally sufficient evidence existed to demonstrate that they were known to be false when made.")  Defendants' contention that their admitted factual misstatements are of no weight in these circumstances is fundamentally mistaken.

### (a) The Statute of Frauds Does Not Insulate Fraudulent Statements of Fact

Defendants are correct that the statute of frauds bars a fraud claim to the extent that the Plaintiffs seek to recover the benefit of a bargain that cannot be enforced because it fails to comply with the statute of frauds. *See Traynor v. Chase Home Finance, LLC*, No. 3:11-cv-800-K, 2013 U.S. Dist. LEXIS 27004, at *3 (N.D. Tex. Feb. 27, 2013). "When an oral agreement is rendered unenforceable by the statute of frauds, a plaintiff cannot sustain an action for fraud by merely alleging that the defendant made an oral promise without the intention of performing it." *Id.* (citing *McClure v. Duggan*, 674 F. Supp. 211, 221 (N.D. Tex. 1987)).  So, for example, the statute of frauds bars complaints that Defendants promised Plaintiffs a HAMP modification.  *Id.*

However, "factual misrepresentations which were made collateral to the unenforceable

agreement" may well form the basis for claims of fraud or negligent misrepresentation. *Duggan*, 674 F. Supp. at 221. "If the alleged fraudulent representations were purely promissory, a tort claim is barred by the statute of frauds; if the representations were factual, the plaintiff may seek recovery under a tort theory." *Hernandez v. U.S. Bank, N.A*., No. 3:13-cv-2164-O-BN, 2014 U.S. Dist. LEXIS 97281, *24-25 (N.D. Tex. July 1, 2014) (citing *Duggan*, 674 F. Supp. at 221). Defendants admittedly made at least the following factual misrepresentations between November of 2010 and April of 2011, *see* Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, Depo. Ex. 26, Northwick Letter:

> (1) Plaintiffs were not eligible to be considered for a HAMP modification. *Id.* (Northwick Letter at 4); *see also* Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at Ex. K, J. Lawrence Affidavit at ¶ 35.

> (2) Plaintiff's modification application had been rejected because no affordable repayment amount consistent with investor guidelines could be found. *Id.* at ¶ 42.; *compare* Mot. Summ. J. [Clerk's Dkt. No. 39] at Ex. 7D (rejection letter of December 31, 2010) *with id.* at Ex. 8, Depo Ex. 26, Northwick Letter at 3 (Wells Fargo "inadvertently provided the incorrect reason for denial" on or about December 31, 2010).

> (3) The only option for repayment assistance was an in-house full repayment plan, *Id.* at Ex. 8, Depo Ex. 26, Northwick Letter at 3, with payments 40% higher than Plaintiffs' original monthly payment. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at Ex. K, J. Lawrence Affidavit at ¶¶ 73-75.

These are not promises of future action or mere statements of opinion. They are not promises to modify the Loan. Rather, they are purported factual statements. Not incidentally, they appear to

be factual statements supporting the position that Plaintiffs should agree to a higher monthly payment as part of an in-house, full repayment plan (an agreement Defendants then promptly reduced to writing on April 29, 2011).  Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 5C.

In October of 2011, Defendants again made the false factual representation that Plaintiffs "were unable to apply for any form of loan modification because [their] loan was a "Texas Cash Out" and that the only type [they] qualified for was repayment."  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at Ex. K, J. Lawrence Affidavit at ¶ 102; Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, Depo Ex. 26, Northwick Letter at 5.[9]  Within less than a month, Defendants reversed position and admitted the mortgage was eligible to be considered for a HAMP loan modification—and had always been eligible for such consideration.  Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, Depo Ex. 26, D. Northwick Letter at 5.  Yet David Northwick of Wells Fargo took the factual position that there was not enough time to review the HAMP application (received November 14, 2011 and supplemented at Wells Fargo's Request on December 2, 2011) before the December 6, 2011 foreclosure.  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at Ex. K, J. Lawrence Affidavit at at ¶ 109.  On the basis of this factual statement, Defendants foreclosed on the Property without considering Plaintiffs' completed HAMP application, even though the same agent, Mr. Northwick, had cancelled prior scheduled foreclosures within 24 hours of receiving information relating to Plaintiffs' negotiations of a potential full repayment plan.  Id. at ¶¶ 96-97; 109-113.  These facts and statements of fact are not insulated by the Statute of Frauds.

---

[9] Plaintiffs' Response to the Motion for Summary Judgment inexplicably makes the argument, unsupported by case law, that the HAMP modification Plaintiffs diligently sought for approximately a year is illegal in Texas for any type of home loan, whether or not it is a home equity loan.  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 18.  This position is legally incorrect, *see generally Sims v. Carrington Mortg. Servs., LLC*, 440 S.W.3d 10 (Tex. 2013).  While bizarre, Plaintiffs' misplaced legal argument is a moot point. The supposed blanket illegality of the HAMP plan in Texas was not a statement ever provided by Defendants to Plaintiffs to justify their refusal to consider modification, rather than full repayment plans, nor did Plaintiffs ever withdraw their request for a HAMP modification during the negotiation process.

**(b) The Economic Loss Rule Does Not Excuse Fraud and Fraudulent Inducement**

Defendants assert the economic loss rule bars any recovery for the factual misstatements noted above, even if they do establish Defendants' apparent intent to lead Plaintiffs into a higher-dollar repayment plan than they would otherwise have considered, because Plaintiffs' payments were the subject of the parties' existing contract.  Mot. Summ. J. [Clerk's Dkt. No. 39] at 7.  There is certainly case law holding that "even if Plaintiffs' claim is for breach of a duty imposed by law and not only created by contract, the Court . . . must also consider 'whether the injury is only the economic loss to the subject of the contract itself.'"  *Hernandez*, 2014 U.S. Dist. LEXIS 97281, *27 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W. 2d 41, 45-47 (Tex. 1998)).   Under this view, "***The nature of the injury*** most often determines which duty or duties are breached.  When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."  *Hernandez,* 2014 U.S. Dist. LEXIS 97281, *28 (emphasis added) (citing *Southwestern Bell Corp. v. DeLanney*, 809 S.W.2d 493, 495 (1991)).   In recent years, however, the Texas Supreme Court has clarified that the economic loss rule does not bar tort recovery in every case where the claimant suffered only economic losses to the subject of a contract.  *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011).   "*Sharyland* emphasized that instead the core inquiry in determining the applicability of the economic loss rule is ***whether the claimed damages arose from "breach of a duty created under contract, as opposed to a duty imposed by law***.'"  *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 883 (Sept. 30, 2013) (quoting *Sharyland* at 417) (emphasis added).

Defendants' oft-repeated argument that the Loan established no contractual duty to provide Plaintiffs a modification demonstrates that claims relating to fraudulent modification

negotiations "do not sound in contract and are thus not subject to the economic loss rule" as clarified by *Sharyland* and its progeny. *Davis*, 976 F.Supp.2d at 883-84 (citing *Auriti v. Wells Fargo Bank, N.A*., No. 3:12-CV-334, 2013 U.S. Dist. LEXIS 77960, 2013 WL 2417832, at *5 (S.D. Tex. June 3, 2013)). As a matter of law, "the economic loss rule does not bar fraud and fraudulent inducement claims." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 764-65 (N.D. Tex. 2012) (collecting cases). "[T]he economic loss rule does not apply to fraud claims because the parties to a contract have an independent duty not to commit the intentional tort of fraud." *Davis*, 976 F.Supp.2d at 883. Defendants' legal duty "is not derived from the note or deed of trust (there are no allegations that these instruments imposed on Defendants a contractual obligation to provide [Plaintiffs] with a modification) but rather from Defendants' legal obligation not to commit fraud when entering into a new business relationship, which a loan modification would have constituted." *Auriti*, 2013 U.S. Dist. LEXIS 77960 at *5.

"Despite the nonexistence under Texas law of a duty between a mortgage servicer and borrower, or a lender and borrower, Texas courts have held that there is always a duty to correct one's own prior false or misleading statement." *Hernandez*, 2014 U.S. Dist. LEXIS 97281, *27 (citing *Hurd*, 880 F. Supp. 2d at 763). "Likewise, the Texas Supreme Court has approved a claim that a 'bank has a duty to use reasonable care whenever it provides information to its customers or potential customers.'" *Id.* (citing *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

### (c) Plaintiffs Justifiably Relied on Defendants' Loan Modification Representations

Plaintiffs, in reliance on the factual misstatements described above, entered a repayment plan on April 29, 2011. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] Ex. K, J. Lawrence Affidavit, at ¶¶ 74-76. Plaintiffs made one full payment under the plan, and attempted to make a

second payment, which Wells Fargo rejected as untimely in June of 2011. *Id.* at ¶¶ 76-78. Plaintiffs have submitted affidavit evidence they felt "pressured and intimidated" to accept this plan. *Id.* Plaintiffs have claimed damages, including damages for mental anguish, that fall outside the mere economic value of the contract. Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] at 19.

Moreover, Plaintiffs continued to try to reach a work-out plan with Defendants until December of 2011, when the foreclosure occurred. Plaintiffs have provided deposition testimony that, if they had not continued to work out a repayment plan for the Loan in reliance on Defendants' statements, they would have sold the house before falling so far behind in their payments that they "couldn't get out." Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo. at p. 221.

Fraud and fraudulent inducement claims are inherently fact-specific claims. *See* FED. R. CIV. P. 9(b) (requiring additional factual specificity in the pleading of fraud claims). On the unique factual record developed in this case, and viewing the summary judgment evidence in the light most favorable to the non-movant, *Griffin.*, 661 F.3d at 221, the undersigned finds Plaintiffs have raised a material fact issue regarding whether Defendants fraudulently induced them to enter, and continue, negotiations for an in-house, full repayment plan by intentionally or recklessly misrepresenting Plaintiffs' eligibility to apply for lower-cost loan modification programs, and whether Plaintiffs' reliance on Defendants' misleading factual statements caused them damages. Therefore, the undersigned RECOMMENDS that this Court GRANT Defendants' Motion for Summary Judgment [Clerks' Dkt. No. 39] as to Plaintiffs' claims for negligent misrepresentation, but DENY Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] as to Plaintiffs' claims for fraud and fraudulent inducement.

**C.  Plaintiffs Have Failed to State a Claim Regarding to the Foreclosure Process**

All of Plaintiffs' complaints relating to the foreclosure process boil down to a simple argument:  For a year, Wells Fargo maintained Plaintiffs were ineligible for consideration for a HAMP modification because their Loan was a "Texas Cash Out," or Home Equity Loan, subject to the restrictions of Texas Constitution, Article XVI, Section 50.  One of those restrictions is the requirement of a judicial foreclosure, rather than a nonjudicial sale.  *Id.* at § 50(a)(6)(D)**.** Plaintiffs maintain that Defendants changed position regarding the nature of the Loan on November 4, 2011, and sold it in a nonjudicial foreclosure a month later without either following the procedure for a judicial sale or backing up and going through the process for notifying plaintiffs of a non-judicial sale.

Defendants contend, and Plaintiffs do not rebut, that Defendants timely notified Plaintiffs of their default, the appointment of a substitute trustee, the acceleration of the Loan, and several notices of sale over the course of the parties' modification negotiations in 2011.  *See* Mot. Summ. J. [Clerk's Dkt. No. 39] at 3 and Ex.5, Ex. 7E, Ex. 3, Ex. 6A.  Thus, Defendants appear to have simply continued along the path they had started almost a year earlier, completing an already-scheduled foreclosure sale that had previously been noticed and for which previous notices of default and acceleration had been sent.  The sale was simply conducted on the courthouse steps, rather than before a judge.

Plaintiffs offer no authority for their argument that Defendants were obligated to start over and re-issue any or all of these notices once they determined the non-judicial foreclosure sale would be possible. Nor have Plaintiffs cited any authority that would require Defendants to conduct a judicial foreclosure proceeding when the Loan was admittedly not subject to Section

50.  Finally, Plaintiffs acknowledge they had actual notice of the sale.  Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] Ex. K, J. Lawrence Affidavit at ¶ 113.

There are at least two additional problems with Plaintiffs' wrongful foreclosure arguments.  First, Texas law typically requires not only some irregularity in the foreclosure proceedings for a wrongful foreclosure claim, but also that the irregularity lead to a "grossly inadequate price" for the property sold.  *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 594 (Tex. App.—Dallas 2012, no pet.).  Plaintiffs have provided no evidence that the selling price of $461,292.49, *see* Mot. Summ. J. [Clerk's Dkt. No. 39] at Ex. 4, is grossly inadequate.

Second, it is undisputed that Plaintiffs continue to live on the Property, and Wells Fargo and the buyer, FHLMC, have offered to work with the Plaintiffs to negotiate a repayment plan and restore their title to the home.  In these circumstances, no monetary damages for wrongful foreclosure have been established.  *See Robinson*, 391 S.W.3d at 594 (noting that where the borrower's possession of the property is uninterrupted and it remains possible to restore the borrower's title, subject to the note holder's right to establish the debt owed and foreclose its lien, money damages for wrongful foreclosure are inappropriate).

Because Plaintiffs have failed to establish an irregularity in the proceedings, an inadequate sale price, or eviction, the undersigned RECOMMENDS that Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] be GRANTED as to Plaintiffs' Wrongful Foreclosure claims.

**D.  Defendants' Post-Foreclosure Conduct Does Not Support a Claim for Relief**

    **1.  Plaintiffs' Complaints Regarding the Forcible Detainer Action Are Moot**

The majority of Plaintiffs' complaints relating to Defendant's post-foreclosure conduct largely relate to the propriety of a forcible detainer (eviction) proceeding filed in state court following the foreclosure.   As it is undisputed that the eviction proceeding was dismissed, Plaintiffs' complaints about technical and factual deficiencies in the proceedings are moot. Therefore, the undersigned RECOMMENDS that Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] be GRANTED as to Plaintiffs' claims relating to the forcible detainer action in Texas state court.

    **2.  No Unjust Enrichment Where Mortgage Debt Was Due and Owing**

Plaintiffs assert Defendants would be unjustly enriched if the foreclosure is allowed to stand.  Orig. Pet. at ¶ 112.  Typically, "[t]here can be no recovery based on [unjust enrichment] when the same subject matter is covered by an express contract." *Baxter v. PNC Bank Nat'l Ass'n,* 541 Fed. Appx. 395, 397 (5h Cir. 2013) (citing *Fortune Prod. Co. v. Conoco Inc*., 52 S.W.3d 671, 684 (Tex. 2000)).  As explained in detail above, the Loan is not void.   *See supra*, Section III.A.   It represents a contractual debt, due and owing, for which foreclosure is a remedy authorized in the contract itself.   *Id.*    Plaintiffs admit they have not been current on their mortgage Loan since January of 2011. Mot. Summ. J. [Clerk's Dkt. 39] Ex. 8, J. Lawrence Depo. at 273-74.  They do not dispute the total amount of the accelerated Loan as $438,415.39.  *Id.* at Ex. 7E.  They have made no offer to pay the amount due and owing under the Loan.  Therefore, the claim that the home should be returned to Plaintiffs, free of the Loan, to avoid unjust enrichment to the Defendants is a non-starter.  *See id.* at Ex. 8, J. Lawrence Depo at 222.

"Winning a free house simply because the mortgage lenders sought to use normal means to recover it from a defaulted debtor would indeed by a lucky strike. But such windfalls are the province of the sweepstakes, not of the federal courts." *Wigginton v. The Bank of New York Mellon*, 488 Fed. App'x. 868, 871 (5th Cir. 2012).  The undersigned RECOMMENDS this Court GRANT Defendants' Motion For Summary Judgment [Clerk's Dkt. No. 39] on Plaintiffs' claims for unjust enrichment.

### 3. Plaintiffs' Promissory Estoppel Claim Fails For Lack of Detrimental Reliance

Last but not least, Plaintiffs assert a claim for promissory estoppel based on Defendants' alleged promise to rescind the foreclosure as the first step in continuing to negotiate a post-foreclosure repayment plan for the Property.  It is well established under Texas law that "promissory estoppel becomes available to a claimant only in the absence of a valid and enforceable contract."  *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (collecting cases).  Once the foreclosure sale concluded, the contract between Plaintiffs and Defendants concerning the Loan was no longer in force.  Thus, Plaintiffs' claim of promissory estoppel is not barred by the existence of a contract between the parties concerning the same subject matter.  *See Guajardo v. J.P. Morgan Chase Bank, N.A.*, No. 13-51025, 2015 U.S. App. LEXIS 3731, *17-18 (5th Cir. March 10, 2015).

"A cause of action for promissory estoppel requires: (1) a promise by the defendant; (2) foreseeable and actual reliance on the promise by the plaintiff to his detriment; and (3) that enforcement of the promise be necessary to avoid an injustice."  *Id.* (internal citations omitted).  Where, as here, the subject of the alleged promise is governed by the statute of frauds, the

plaintiff must additionally show "not only that the defendant made a promise upon which he relied, but also 'that the [defendant] promised to sign a written document complying with the statute of frauds.'"  *Id.* (quoting *Martins v. BAC Home Loans Servicing, L.P.,* 722 F.3d 249, 256-57 (5th Cir. 2013)); *see also Martin-Janson v. JP Morgan Chase Bank, N.A.*, 536 Fed. Appx 394, 399 (5th Cir. July 15, 2013).

Plaintiffs have alleged Defendants promised to rescind the foreclosure, and Defendants themselves admit that "[d]uring a telephone conversation on January 10, 2012, [Plaintiffs] were advised that the foreclosure would be rescinded . . .."  Mot. Summ. J. [Clerk's Dkt. No. 39], Ex. 5F, McMahon letter at 2.  Defendants never filed a notice of foreclosure, and later asserted "this telephone conversation incorrectly stated the foreclosure had been rescinded.  WFHM should have communicated that we received conditional approval for a recession [sic] contingent on receiving the financial documentation and approving a loan modification."  *Id.*

The undersigned declines to consider whether Defendants' telephone statements amount to a promise to record a rescission in the county property records, and whether such a promise would satisfy the statute of frauds under *Guajardo*, 2015 U.S. App. LEXIS 3731, at *17-18, because Plaintiffs have not identified any evidence of detrimental reliance on the alleged promise.  Reliance damages "cover expenditures made in preparation for performance or in performance, and essentially seek to restore the status quo by putting the injured party in the 'position  . . . he would have been [in] had the [promise] not been formed.'"  *Waltner v. Aurora Loan Servs., L.L.C.*, 551 Fed. Appx. 741, 746 (5th Cir. 2015) (citing *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 926 (Tex. App.—Austin 2008, no pet.)

Plaintiffs have not identified any actions taken or omitted to their detriment in reliance on

the promised rescission.  Ms. Lawrence testified that she did not provide an updated financial packet to Defendants in January of 2015, as requested, because she was waiting for them to file the notice of the rescinded foreclosure.  Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo at 207.   Yet it is clear the parties subsequently continued to engage in post-foreclosure negotiations (including the cancellation of an eviction trial on January 12, 2012, *Id.* at Ex. 5F; *id.* at Ex. 7G, and at least one more round of applications for repayment assistance in May of 2012, Resp. Mot. Summ. J. [Clerk's Dkt. No. 41] Ex. K, J. Lawrence Affidavit at ¶ 114).  Therefore, any temporary stall in the post-foreclosure repayment negotiations in January of 2012 does not rise to the level of detrimental reliance.  Plaintiffs have continued to occupy the Property, without making any payments.  Mot. Summ. J. [Clerk's Dkt. No. 39] Ex. 8, J. Lawrence Depo. At 274.  They have not explained how this continued occupancy is detrimental.  Plaintiffs have not identified any other action taken or not taken in reliance on Defendants' alleged promise to rescind the foreclosure.  Without the element of detrimental reliance, the promissory estoppel claim must fail.  *Waltner*, 551 Fed. Appx. at 746.

Therefore, the undersigned RECOMMENDS this Court GRANT Defendants' Motion for Summary Judgment regarding Plaintiffs' promissory estoppel claim arising out of post-foreclosure negotiations.

## IV.  RECOMMENDATION

In light of the foregoing analysis, the undersigned RECOMMENDS that the Court:

DENY Plaintiffs' Motion for Continuance (contained in Plaintiffs' Response to Wells Fargo Bank, N.A, Mortgage Electronic Registration Systems, Inc. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment, Motion for Continuance and Motion to

Strike [Clerk's Dkt. No. 41]);

DENY Plaintiffs' Motion to Strike (contained in Plaintiffs' Response to Wells Fargo Bank, N.A, Mortgage Electronic Registration Systems, Inc. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment, Motion for Continuance and Motion to Strike [Clerk's Dkt. No. 41]);

DENY Plaintiffs' Motion for Leave [Clerk's Dkt. No. 42]; and

GRANT in PART and DENY in PART Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39].   The undersigned RECOMMENDS that Defendants' Motion be GRANTED, and all Plaintiffs' claims against the remaining Defendants be dismissed with prejudice, with the exception of their claims against Wells Fargo Bank, N.A. (Wells Fargo), and its merged subsidiary, Wells Fargo Home Mortgage (WFHM), for fraud and fraudulent inducement in the loan modification negotiations.

The undersigned RECOMMENDS that all claims against Defendant, Merscorp, Inc. (MERS), be dismissed with prejudice.

The undersigned further RECOMMENDS Defendants' Motion for Summary Judgment [Clerk's Dkt. No. 39] be DENIED as to Plaintiffs' claims against Wells Fargo Bank, N.A. (Wells Fargo), and its merged subsidiary, Wells Fargo Home Mortgage (WFHM), for fraud and fraudulent inducement in the loan modification negotiations, as the summary judgment evidence is sufficient to raise material fact issues on these claims.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections

must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED on March 30, 2015.

_____
Mark Lane,
United States Magistrate Judge